ON REHEARING
 

 POLEN, J.
 

 We deny petitioner’s Motion for Clarification, Rehearing or Rehearing
 
 En Banc,
 
 and for Certification of Questions to the Florida Supreme Court, but substitute the following opinion in place of our previously issued one.
 

 Columbia Hospital Corporation of South Broward (Columbia), d/b/a Westside Regional Medical Center, petitions for a writ of certiorari seeking to quash a trial court order that denied Columbia’s objections to a plaintiffs request for discovery. This case involves Article X, Section 25 of the Florida Constitution, enacted as “Amendment 7,” regarding a patient’s right to discover records related to adverse medical incidents. Columbia raises numerous challenges to the trial court’s order and Amendment 7 in general. We conclude that Amendment 7 does not violate the Constitution of the United States as argued by Columbia. We also conclude that certain arguments raised by Columbia are not ripe for decision and that no basis for certiorari relief is established. We, therefore, deny the petition.
 

 Facts
 

 The facts pertinent
 
 to
 
 this proceeding are simple and not in dispute. Decedent William Fain, while an inpatient at West-side Regional Medical Center, fell from a hospital bed and subsequently died. Fain’s estate sued Columbia for medical negligence. In discovery, and pursuant to Amendment 7, the estate requested incident reports for Fain’s fall and of all adverse medical incident reports involving falls of patients under “fall precautions” within the last five years. Columbia objected to the requests on a number of grounds, including an argument that incident reports were protected work product. The trial court entered an order overruling many of Columbia’s objections and requiring further proceedings on others. In this petition, Columbia seeks to quash the trial court’s order.
 

 
 *239
 

 Jurisdiction
 

 To the extent the petition argues that the trial court’s order requires production of materials that are privileged or protected, a threshold showing of irreparable harm necessary to invoke this court’s certiorari jurisdiction is established.
 
 Allstate Ins. Co. v. Langston,
 
 655 So.2d 91, 94 (Fla.1995). The requested information constitutes “cat out of the bag” material: the inappropriate discovery of this information cannot adequately be remedied on direct appeal.
 
 See id.
 
 at 94. We discuss each of Columbia’s arguments in turn.
 

 Work Product and Tidal Preparation Protections
 

 Columbia argues that the trial court departed from the essential requirements of law because it failed to consider or rule on its objections that some of the requested materials were protected as attorney work product or as trial preparation materials. Fla. R. Civ. P. 1.280(b)(3). As it did below, Fain’s estate concedes that materials requested pursuant to Amendment 7 are subject to work product or attorney-client privilege objections.
 

 The parties argue that, in the advisory opinion approving of the Amendment 7 ballot initiative, the Florida Supreme Court found that the amendment would not affect the “work product privilege” under Rule 1.280.
 
 In re Advisory Opinion to the Atty. Gen. re Patients’ Right to Know About Adverse Medical Incidents,
 
 880 So.2d 617 (Fla.2004). In that opinion, however, the Florida Supreme Court merely rejected the argument raised by the sole opponent to the ballot initiative. The opponent had argued that the amendment would impact judicial functions by affecting the protections of Rule 1.280. The Court noted:
 

 Contrary to the clear effect upon the above two statutes [which provided for limited discoverability of peer review proceedings], the amendment does not expressly affect either rule 1.280(c) or the attorney-client privilege, and there is no evidence of any intent to do so. Any effect on the rule or the privilege is purely speculative; and, even if true, any such effect would not rise to the level of “substantially” altering or performing a function of the judiciary.
 

 880 So.2d at 621. The Florida Supreme Court did not rule that a request for materials under Amendment 7 can be denied based on an objection thát an adverse incident report is protected fact work product. The Court was responding to an argument that the amendment would affect more than one branch of government.
 

 Prior to the passage of Amendment 7, a hospital’s incident reports have generally been considered protected as fact work product and discoverable only upon a showing of need and undue hardship.
 
 N. Broward Hosp. Dist. v. Button,
 
 592 So.2d 367, 368 (Fla. 4th DCA 1992);
 
 Mount Sinai Med. Ctr. v. Schulte,
 
 546 So.2d 37 (Fla. 3d DCA 1989);
 
 Bay Med. Ctr. v. Sapp,
 
 535 So.2d 308, 312 (Fla. 1st DCA 1988);
 
 Humana of Fla., Inc. v. Evans,
 
 519 So.2d 1022 (Fla. 5th DCA 1987).
 

 Amendment 7 provides that
 
 “any records mude or received in the course of business by a health care facility or provider relating to any adverse medical incident”
 
 are subject to discovery. Art. X, § 25(a), Fla. Const, (emphasis added). It is not clear that a provider or healthcare facility may, after the amendment, continue to refuse to provide an adverse medical incident report based on a fact work product objection. A distinction may need to be drawn between fact work product and opinion work product.
 

 We need not decide this issue as it is not ripe for review. As in
 
 Morton Plant
 
 
 *240
 

 Hospital Ass’n v. Shahbas ex rel. Shahbas,
 
 960 So.2d 820, 825 (Fla. 2d DCA 2007), in addition to the work product objections, Columbia argued that the estate’s discovery requests were overly broad, irrelevant, and unduly burdensome. The trial court made a preliminary determination that the materials sought were “otherwise discoverable.” Pursuant to
 
 Gosman v. Luzinski,
 
 937 So.2d 293, 295 (Fla. 4th DCA 2006), a party need not file a privilege log until the trial court has decided as a preliminary matter whether the materials sought are “otherwise discoverable.” The estate concedes that, as in
 
 Shahbas,
 
 Columbia may now file a privilege log and assert its claim of work product protection. 960 So.2d at 826. Because the trial court has not decided the question of whether any of the materials sought are protected, we decline to decide the question for the first time in this proceeding.
 

 Irrelevance, Overbreadth, and Burdensomeness Objections
 

 Columbia argued that the estate’s discovery requests are irrelevant, over-broad, and unduly burdensome. The trial court correctly recognized that these are not proper objections to discovery of Amendment 7 materials. The Second District in
 
 Shahbas
 
 clearly held that “burdensome is not a relevant consideration under Amendment 7.” 960 So.2d at 826. Further, Amendment 7 contains no requirement that the information sought by a patient be relevant to any pending medical malpractice action or medical care decision.
 
 Id.
 
 at 825.
 

 This court recently rejected an attempt to impose a “standing” requirement on Amendment 7 discovery which had sought to limit discovery to those who were physically patients at a facility, or actual prospective patients seeking the materials for a “proper purpose.”
 
 Amisub N. Ridge Hosp., Inc. v. Sonaglia,
 
 995 So.2d 999, 1001 (Fla. 4th DCA 2008) (Notice to Invoke Discretionary Jurisdiction pending in SC09-132). As we recognized in
 
 Sonaglia,
 
 irrelevance is not a proper objection to a request for Amendment 7 materials.
 
 Id.
 
 at 1001.
 

 Amendment 7 defines a “patient” broadly to include almost anyone. No reasonable method exists through which Amendment 7 could be limited to requests made with a “proper purpose,” nor does the amendment in any way limit (nor could it reasonably limit) to whom information could be revealed once disclosed pursuant to Amendment 7. The purpose of Amendment 7 was to lift the shroud of secrecy from records of adverse medical incidents and make them widely available.
 

 In
 
 Florida Hospital Waterman, Inc. v. Buster,
 
 984 So.2d 478 (Fla.2008), in addition to finding that Amendment 7 was self-executing and applied retroactively to materials prepared before its passage, the Florida Supreme Court held that the legislature’s attempts to limit requests under the amendment to facilities or providers where the party seeking the information was physically a “patient” receiving treatment were unconstitutional.
 
 Id.
 
 at 493 (finding that section 381.028(7)(a), and other portions of this “implementing” statute were inconsistent with the language of the amendment and unconstitutional).
 

 A request for Amendment 7 materials is not an ordinary discovery request which can be subjected to overbreadth, irrelevance, or burdensomeness objections. Pursuant to the amendment, a “patient” has the absolute right to discover records relating to any adverse medical incident and that right is not conditioned on the discovery being relevant to a pending claim. A litigant in a medical malpractice case clearly qualifies as a “patient” under
 
 *241
 
 the amendment and is entitled to discover the information. It is illogical to conclude that the estate could discover information regarding adverse medical incidents outside the context of this litigation but cannot discover the same information as part of its discovery in this case.
 

 Columbia’s reliance on language in
 
 Wellner v. East Pasco Medical Center, Inc.,
 
 975 So.2d 442, 444 (Fla. 2d DCA 2007), is misplaced because in
 
 Wellner
 
 the court held merely that the denial of an untimely discovery request for Amendment 7 materials was not reversible error.
 
 Wellner
 
 did not hold that Amendment 7 materials can be discovered only outside the context of pending litigation. We decline to impose an unworkable distinction between Amendment 7 requests made in a pending case and those made outside the context of litigation.
 

 Procedural Protections under Section 381.028
 

 Columbia argues that the trial court failed to consider or rule on its claims of procedural protections under section 381.028, Florida Statutes. The statute provides: “The health care facility may require payment, in full or in part, before acting on the records request.” § 381.028(7)(c)1, Fla. Stat. (2008).
 

 In
 
 Buster,
 
 the Florida Supreme Court found that the aspects of the statute which provide for payment of reasonable costs and fees associated with an Amendment 7 request were consistent with the amendment and constitutional. 984 So.2d at 493. In its response to this court, as it did below, the estate again concedes that it may be required to pay the
 
 reasonable
 
 costs associated with its Amendment 7 request prior to production. The estate, however, has disputed the hospital’s representations regarding the amount it will cost to comply with the discovery requests. The trial court’s order reserved ruling on the amount of costs to be paid pending completion of the estate’s deposition of Columbia’s risk manager regarding the cost of complying with the requests.
 

 The estate has offered to work with Columbia and make necessary compromises in order to facilitate the discovery it seeks. As the estate does not contest the requirement that it must pay the
 
 reasonable
 
 costs associated with the discovery before production, we need not decide this issue. Columbia has not been required to produce the materials prior to payment. No departure from the essential requirements of law is established.
 

 Columbia also argues that language in section 381.028(7)(b)l limits the types of records that it may be required to produce and provides the sole method through which the hospital must identify records of adverse medical incidents. Columbia’s argument that pursuant to this statute it must provide only certain reports (“Code 15” reports under section 395.0197) is expressly contrary to the amendment. The amendment provides that it is
 
 “not limited to
 
 ” incidents that already must be reported under law. Art. X, § 25(c)(3), Fla. Const, (emphasis supplied). As the Florida Supreme Court held in
 
 Buster,
 
 the legislature may not limit the scope of dis-coverability of adverse incident reports in a manner inconsistent with the amendment. Columbia’s argument calls for an unconstitutional application of the statute.
 

 Federal Preemption
 

 Columbia argues that the trial court failed to consider or rule on its argument that Amendment 7 violates the Supremacy Clause of the Constitution of the United States of America and is preempted by federal legislation. Columbia contends that Amendment 7 is impliedly preempted by the Health Care Quality
 
 *242
 
 Improvement Act of 1986 (HCQIA) because the abolition of peer review discovery protections is contrary to the Act’s intent to foster
 
 “effective
 
 peer review.” § 42 U.S.C. § 11101,
 
 et seq.
 
 (2008) (emphasis added).
 
 See State v. Harden,
 
 938 So.2d 480, 485-86 (Fla.2006) (discussing the three recognized forms of federal preemption, including the third form which is the form argued for here, implied conflict preemption whex-e state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress”),
 
 cert. denied,,
 
 550 U.S. 903, 127 S.Ct. 2097, 167 L.Ed.2d 812 (2007).
 

 Nothing in the HCQIA requires the states to provide confidentiality for peer review materials. Columbia relies entirely on the federal congress’s statement of its intent and findings in the HCQIA which states that “[t]he nationwide problem of [increasing medical malpractice] can be remedied through
 
 effective
 
 professional peer review.” 42 U.S.C. § 11101(3) (emphasis added). Columbia argues that
 
 effective
 
 peer review requires confidentiality and that without this confidentiality effective peer review will cease to exist. As a result, Columbia argues that Amendment 7 is inconsistent with the HCQIA’s full pui'pose and objective of providing for effective peer review as a tool for limiting medical malpractice.
 

 The HCQIA, however, accomplishes its purpose of encouraging effective professional peer l’eview through the provisions of “Subchapter I — Promotion of Professional Review Activities.” 42 U.S.C. §§ 11111 to 11115. The act provides “protection” encouraging effective peer review by immunizing peer review bodies and those providing information in such proceedings from damages in a civil suit. 42 U.S.C. § 11111.
 

 Subchapter II of the HCQIA provides for limited confidentiality of certain reports which must be submitted for inclusion in a national database. 42 U.S.C. § 11137(b)(1). Reports under Subchapter II, which requires repoiting of certain in-foimation to prevent the problem of incompetent doctors moving from one state to another, are not at issue in this case, and Amendment 7 would not contradict the general confidentiality provisions of that section. Care must be taken to remember that Amendment 7 affects only repoi'ts pertaining to
 
 adverse medical incidents.
 

 As to Subchapter I, the HCQIA contains provisions regarding how it is to be construed with state law and provides:
 

 Except as specifically provided in this subchapter,
 
 nothing in this subchapter shall be construed, as changing the liabilities or immunities under law or as preempting or ovemding any State law which provides incentives, immunities, or protection for those engaged in a professional review action that is in addition to or greater than that provided by this subchapter.
 

 42 U.S.C. § 11115(a) (emphasis supplied). Thus, under the HCQIA, Florida’s statutes, which had provided greater protection and incentives by providing discovery pi'otections for peer review proceedings, were expressly not preempted.
 
 See
 
 §§ 395.0191(8), 395.0193(8), and 766.101(5), Fla. Stat. (2008) (providing for limited dis-coverability for peer review and medical review proceedings). Nothing in the HCQIA, however, preempts a state from removing confidentiality or discovery protections that are not required by the federal act.
 

 Columbia contends that the pi-ovisions of Subchapter I and II of the HCQIA work in tandem and that Amendment 7, by preventing the state from making peer review proceedings confidential, interferes with its purposes. Columbia’s argument boils
 
 *243
 
 down to the claim that peer review cannot be “effective” if the discovery protections previously afforded by Florida’s statutes are abrogated by Amendment 7.
 
 [1]
 
 In
 
 Busier,
 
 the Florida Supreme Court made clear that the limited discovery protections previously afforded by Florida’s statutes were effectively abolished by the passage of Amendment 7 as far as adverse medical incidents are concerned. 984 So.2d at 488-89. These discovery protections were not mandated by the HCQIA, and while they may have contributed to effective peer review in Florida, the people of the State of Florida are not preempted from abolishing these statutory protections by constitutional amendment.
 

 Columbia’s disagreement with the policy adopted by Florida’s voters is not sufficient to overcome the presumption of constitutionality or to demonstrate a departure from the essential requirements of law.
 

 Impairment of Contracts
 

 Finally, Columbia argues that Amendment 7 is unconstitutional as it impairs its contracts with its doctors because those contracts have confidentiality provisions. In
 
 Buster,
 
 the Florida Supreme Court determined that providers and facilities did not have vested, substantive statutory rights to keep peer review materials secret. 984 So.2d at 490-91. Columbia essentially argues that its doctors have vested contractual rights to confidentiality which cannot be taken away by constitutional amendment.
 

 Article I, Section 10 of the federal Constitution prohibits the states from passing any law that impairs “the Obligation of Contracts.” Columbia argues that Amendment 7 constitutes a law impairing obligations arising from provisions in its contracts with its doctors, and in its bylaws and staff regulations, that peer review proceedings remain confidential.
 

 To establish a violation of this constitutional provision, Columbia must first show that Amendment 7 “substantially impairs” a contractual right.
 
 Pomponio v. Claridge of Pompano Condo., Inc.,
 
 378 So.2d 774 (Fla.1979). “Reasonable” impairments on contracts are permissible.
 
 Id.
 
 at 777.
 

 Courts employ a balancing test which measures the level of impairment against the public purpose to be served. “An impairment may be constitutional if it is reasonable and necessary to serve an important public purpose.”
 
 Pomponio,
 
 378 So.2d at 778-79 (citing
 
 United States Trust Co. v. New Jersey,
 
 431 U.S. 1, 25, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).
 

 In
 
 Allied Structural Steel Co. v. Spannaus,
 
 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the United States Supreme Court described the test as follows:
 

 [T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual
 
 *244
 
 relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation.
 

 Pomponio,
 
 378 So.2d at 779. In this case, the impairment is not severe, and we conclude that the public’s interest in providing for broad discoverability of adverse medical incident reports easily meets the constitutional hurdle.
 

 Conclusion
 

 For the reasons expressed in this opinion, we conclude that the trial court’s order denying Columbia’s objections to the discovery requests for Amendment 7 material did not depart from the essential requirements of law. The petition is DENIED.
 

 FARMER and HAZOURI, JJ., concur.
 

 [1]
 

 . Peer review is not necessarily rendered "ineffective" simply because the limited discovery protections previously provided by Florida statutes are lifted. Florida’s statutes, and the HCQIA, continue to provide
 
 immunity
 
 from liability for statements or opinions in peer review proceedings.
 
 See
 
 42 U.S.C. § 11111 (providing immunity from liability and damages to peer review bodies or those participating in peer review process); § 766.101, Fla. Stat. (2008) (providing immunity for medical/peer review process). The immunity created by the HCQIA was precisely the "protection” that Congress referred to in its statement of intent. 42 U.S.C. § 11101(5). Although Florida could not enact legislation removing this immunity or providing less protection or incentives than the HCQIA, the limited confidentiality that had previously been required by Florida statutes, is not required under the HCQIA.