WALLACE, Judge.
Bartow Regional Medical Center petitions for certiorari review of an order requiring it to produce certain documents in the underlying medical malpractice action brought by Ollie J. Kirkland. Bartow Regional argues that the circuit court’s order departs from the essential requirements of the law, causing it irreparable harm by requiring it to produce privileged documents and other items not subject to discovery. Bartow Regional also challenges the circuit court’s failure to perform an in camera review before making a blanket ruling on Bartow Regional’s asserted privileges and the circuit court’s imposition of sanctions on account of its good faith objections. We agree that the circuit court departed from the essential requirements of the law in making a blanket ruling on Bartow Regional’s asserted privileges and objections absent an in camera review, causing irreparable harm that is not remediable on appeal. Accordingly, we grant the petition and quash the order under review.
1. THE FACTS AND PROCEDURAL HISTORY
In the underlying matter, Ms. Kirkland sued Bartow Regional and others for alleged medical malpractice in connection with a cholecystectomy[1] performed by Dr. Larry D. Thomas at Bartow Regional. On June 22, 2011, Ms. Kirkland served her first request for production on Bartow Regional. Some, but not all, of the requests specifically asked for documents relating to adverse medical incidents as defined by article X, section 25(a) of the Florida Constitution, or “Amendment 7.” Bartow Regional filed a motion for protective order concerning some of the requests and asserted various statutory privileges. The circuit court ordered Bartow Regional to produce “[a]ny documents which reference ‘adverse medical incident,’ no matter how titled, ... only to the extent that an ‘adverse medical incident’ is discussed” and denied Bartow Regional’s motion for protective order.[2] On October 1, 2012, Bar-tow Regional filed in the circuit court a notice of filing privilege logs A, B, and C concerning the first request for production.
*1250 On September 6, 2012, Ms. Kirkland served her second request for production on Bartow Regional. The categories of documents requested in Ms. Kirkland’s second request for production were different than those in the first request for production, and Ms. Kirkland did not specifically reference the term “adverse medical incident” or Amendment 7 in the second request for production.
Bartow Regional produced some documents in response to the second request for production. It also asserted various objections to some of the requests, including that they were overly broad, unduly burdensome, and failed to contain reasonable limitations of time or scope. In addition, Bartow Regional asserted various common law privileges and statutory limitations on discovery to some of the requests, including that the documents requested were protected by the work product privilege and/or the peer review/risk management/quality assurance discovery limitations under sections 395.0191, 395.0198, 395.0197, 766.101, Florida Statutes (2012), and the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101-11152 (“HCQIA”). Bar-tow Regional also cited to section 381.028, Florida Statutes (2012), which purports to implement and define the scope of Amendment 7.
On October 9, 2012, Bartow Regional filed a notice of filing privilege logs numbered 1, 2, and 3 in response to the second request for production. The items identified in privilege log 1 are the same as those identified in the previously filed privilege log A; the items identified in privilege log 2 are the same as those identified in the previously filed privilege log C; and the items in privilege log 3 are the same as those identified in the previously filed privilege log B. With regard to the documents listed in the privilege logs, Bartow Regional asserted the same privileges that it claimed in its response to the second request to produce.
On November 1, 2012, Ms. Kirkland served a motion to compel production of documents and for an in camera review. She sought to compel production of the documents identified in Bartow Regional’s privilege logs A, 2, and 3, and she argued that the documents were discoverable under Amendment 7. Ms. Kirkland acknowledged that she was unable to determine whether the records listed in privilege log 3 numbered 15-16 and 19-21 were protected by the attorney-client privilege, and she requested that the circuit court conduct an in camera review of those documents to make that determination.
Ms. Kirkland asserted in her motion that “each request in Plaintiffs Second Request for Production is carefully limited to requesting documents related to an adverse medical incident” and was thus discoverable under Amendment 7. In support of this statement, she asserted that Dr. Thomas had performed a laparo-scopic cholecystectomy on her, which he converted to an open cholecystectomy. This surgery allegedly caused her injury. Therefore, according to Ms. Kirkland, any surgery involving a conversion from lapa-roscopic to open satisfied the definition of an adverse medical incident under Amendment 7. Because all of the items she requested to be produced in her second request for production “related to Dr. Thomas[’s] converting from laparoscopic to open ... these documents ‘relate’ to an ‘adverse medical incident’ and therefore any documents responsive to these requests are covered by Amendment 7.”[3]
*1251 On January 15, 2013, the circuit court held a hearing on Ms. Kirkland’s motion to compel. At the hearing, Bartow Regional’s counsel told the court that all of the items listed on privilege log A — and thus the items on privilege log — were produced in their entirety to Ms. Kirkland. Accordingly, the items identified on privilege logs A and 1 are no longer at issue.[4]
Ms. Kirkland’s counsel asserted that her requests for production were limited to requests for documents containing reports of adverse medical incidents. Counsel argued that any document dealing with an adverse medical incident was discoverable and that the privileges claimed by Bartow Regional do not apply to adverse medical incidents discoverable under Amendment 7. However, counsel acknowledged that certain documents listed on the privilege logs may be protected by the attorney-client privilege. Accordingly, he asked the circuit court to conduct an in camera review with respect to those documents.
In response, Bartow Regional’s counsel argued that, in fact, not every item listed on the privilege logs contains an adverse incident report and requested an in camera inspection to determine which documents were truly adverse incident reports subject to production under Amendment 7. Counsel explained that some of the documents identified in its privilege logs contained peer review committee notes of general discussions about improving the quality of care based on empirical data but did not specifically refer to any adverse medical incident. In addition, counsel stated that in several instances the documents requested by Ms. Kirkland did not exist. But in an abundance of caution, he had listed documents that could arguably relate to her requests for production. Counsel argued that the privileges had been properly asserted, warranting an in camera review or further analysis.
Notably, counsel for both parties agreed that — albeit for different reasons — the circuit court was required to conduct an in camera review before ordering a blanket production of all of the documents in question. Nevertheless, the circuit court did not conduct such a review. Instead, the circuit court simply granted the motion to compel and allowed Bartow Regional ten days to “comply.” The circuit court also awarded Ms. Kirkland her attorney’s fees and costs for bringing the motion to compel.
Counsel for Bartow Regional asked for clarification of the court’s ruling, questioning whether it was required “to produce all of the items that are included on the two privilege logs.” The circuit court judge responded, “I’ve looked at those privilege logs attached to the motion[,] and I didn’t find anything that you shouldn’t produce if it’s containing an adverse medical report” (Emphasis added.) Counsel reiterated that several of the items included in the privilege log were not adverse incident reports and that he could show those documents in camera. The circuit court judge stated, “If you put it on the privilege log, A, B, or C, you need to produce it.”[5] On January 10, 2013, the circuit court entered a written order that memorialized its oral ruling at the hearing.
II. THE ISSUE OF JURISDICTION
To be entitled to certiorari review, Bartow Regional must establish that the *1252 circuit court’s order departs from the essential requirements of the law and causes material injury to it throughout the remainder of the proceedings below with no adequate remedy on appeal. See Lakeland Reg’l Med. Ctr. v. Neely ex rel. Neely, 8 So.3d 1268, 1269 (Fla. 2d DCA 2009); Morton Plant Hosp. Ass’n, Inc. v. Shahbas ex rel. Shahbas, 960 So.2d 820, 823 (Fla. 2d DCA 2007).
In its petition, Bartow Regional argues that the circuit court departed from the essential requirements of the law by requiring it to produce materials that do not constitute records of adverse medical incidents, that are protected by several privileges, or both. As discussed below, we conclude that Ms. Kirkland’s requests for production may require Bartow Regional to produce privileged documents not relating to an adverse medical incident. Thus we conclude that Bartow Regional has satisfied the “threshold showing of irreparable harm necessary to invoke this court’s certiorari jurisdiction.” Columbia Hosp. Corp. of S. Broward v. Fain, 16 So.3d 236, 239 (Fla. 4th DCA 2009) (on denial of rehearing). We now turn to the issue of whether the circuit court’s order departs from the essential requirements of the law.
III. THE APPLICABLE LAW
Article X, section 25 of the Florida Constitution, or “Amendment 7,” was approved by the voters in the general election held on November 2, 2004. See Morton Plant, 960 So.2d at 823. Amendment 7 provides that “[i]n addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.” Art. X, § 25(a), Fla. Const, (emphasis added).
The phrase “adverse medical incident” means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to,, those incidents that are required by state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
Art. X, § 25(c)(3), Fla. Const, (emphasis added).
A request for Amendment 7 materials differs significantly from an ordinary discovery request, the latter being subject to objections based on overbreadth, burdensomeness, or lack of relevance. Unlike the litigant engaging generally in discovery, the party seeking access to records pursuant to the amendment gains a foothold by satisfying the threshold showing of an adverse medical incident.
Baldwin v. Shands Teaching Hosp. & Clinics, Inc., 45 So.3d 118, 124 (Fla. 1st DCA 2010) (on denial of rehearing) (citations omitted).
Under Amendment 7, a patient is “entitled to any of the hospital’s records relating to any adverse medical incident” and “[tjhere is no requirement that the records ... be relevant to any pending litigation.” Morton Plant, 960 So.2d at 825; see also Columbia Hosp., 16 So.3d at 240 (citing Morton Plant). In addition, “[w]hether the request is overly burdensome is not a relevant consideration under Amendment 7.” Morton Plant, 960 So.2d at 826; see also Columbia Hosp., 16 So.3d at 240 (citing Morton Plant). Amendment 7 also requires the hospital to protect the identity of patients, and thus an objection based on the violation of a patient’s *1253 right of privacy normally will not preclude production unless the trial court’s order requires a hospital to produce documents of other patients without redacting their private information. Morton Plant, 960 So.2d at 826.
Furthermore, Amendment 7 trumps the application of the statutory discovery protections set forth in sections 395.0191, 395.0193, 395.0197, and 766.101 to the extent that documents for which those protections are asserted contain reports of adverse medical incidents. See W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 12 (Fla.2012); Fla. Hosp. Waterman, Inc. v. Buster, 984 So.2d 478, 490-92 (Fla.2008). Moreover, a patient’s entitlement to documents relating to adverse medical incidents under Amendment 7 is not preempted by federal law in the form of the HCQIA. See West Fla. Reg’l, 79 So.3d at 15-21; Columbia Hosp., 16 So.3d at 241-43. And the Supreme Court of Florida has held that the scope of Amendment 7 cannot be limited by the application of section 381.028, which purports to implement the amendment. See West Fla. Reg’l, 79 So.3d at 13-15. However, “Amendment 7 does not require production of documents relating to general policies and procedures of [health care facility peer review, risk management, quality assurance, credentials, or similar] committees or other documents that do not contain information about particular adverse medical incidents.” Morton Plant, 960 So.2d at 827.
Amendment 7 also preempts application of the work product doctrine to the extent it relates to fact work product. Lakeland Reg’l, 8 So.3d at 1269-70; see also Fla. Eye Clinic, P.A. v. Gmach, 14 So.3d 1044, 1048-49 (Fla. 5th DCA 2009). But it does not preempt application of the work product doctrine with respect to opinion work product. Fla. Eye Clinic, 14 So.3d at 1049-50. It has also been suggested that Amendment 7 does not affect the attorney-client privilege. Morton Plant, 960 So.2d at 825. Accordingly, before a determination can be made about whether and to what extent the privileges asserted by Bartow Regional apply to Ms. Kirkland’s requests for production, the threshold question of whether the documents relate to an adverse medical incident within the meaning of Amendment 7 must first be addressed.
IV. DISCUSSION
Here, Bartow Regional purportedly listed numerous documents on its privilege logs that do not constitute or necessarily contain reports of adverse medical incidents. Also, Bartow Regional purportedly identified documents in its privilege logs that are not responsive to the requests for production. Ms. Kirkland argues that all of her requests for production are limited to documents relating to adverse medical incidents. We disagree.
Contrary to Ms. Kirkland’s position, not all of the requests specifically limit production to documents including a report of an “adverse medical incident” or assert that the request is being made in the context of Amendment 7. Moreover, Ms. Kirkland’s argument that all records that concern Dr. Thomas’s conversion of a laparoscopic procedure to an open procedure necessarily concern an adverse medical incident is based upon a faulty premise. “Factors that may increase the possibility of choosing or converting to the ‘open’ procedure may include obesity, a history of prior abdominal surgery causing dense scar tissue, inability to visualize organs[,] or bleeding problems during the operation.” Society of American Gastrointestinal and Endoscopic Surgeons, Laparoscopic Gallbladder Removal (Cholecystectomy) Patient Information from SAGES (2013), http://www.sages.org/publications/patient- *1254 information/patient-information-for-laparoscopic-gallbladderremoval-cholecyst ectomy-from-sages/ (last visited October 30, 2013). Thus the possibility that the conversion from a laparoscopic procedure to an open one resulted from medical negligence in Ms. Kirkland’s case does not mean that is true in all cases of conversion. There are multiple reasons for conversion from the laparoscopic method to the open method that do not arise from “medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient.” Art. X, § 25(c)(3), Fla. Const.
Because we conclude that Ms. Kirkland’s requests to produce were not limited to adverse medical incidents, Bartow Regional cannot be faulted for identifying documents in its privilege logs that do not necessarily relate to an adverse medical incident. In addition, because the determination of whether a document is discoverable as one relating to an adverse medical incident is a threshold question in determining whether certain privileges apply, the circuit court should have determined whether the documents identified in the privilege logs relate to an adverse medical incident within the meaning of Amendment 7. Thus the circuit court departed from the essential requirements of the law in ordering a blanket production of all of the items identified on the privilege logs without specifically determining whether those documents relate to adverse medical incidents within the meaning of Amendment 7. See Morton Plant, 960 So.2d at 827.
V. CONCLUSION
Accordingly, we grant Bartow Regional’s petition and quash the order under review. Because the course of the discovery proceedings between the parties has developed into a procedural and evidentia-ry quagmire, we offer the following road map to guide the circuit court and the parties going forward. First, the circuit court should address whether the documents identified in privilege logs 2 and 3 contain reports of adverse medical incidents under Amendment 7; whether the privileges asserted are preempted by application of Amendment 7; or, in the case of a responsive document that is not discoverable under Amendment 7, whether the asserted privilege applies. Thereafter, the circuit court should conduct an in camera review to the extent necessary to resolve whether certain documents concern adverse medical incidents and whether and to what extent the asserted privileges apply. See Patrowicz v. Wolff, 110 So.3d 973, 974 (Fla. 2d DCA 2013) (holding that the circuit court departed from the essential requirements of the law by ordering disclosure of documents that opponent claimed were privileged without conducting an in camera inspection).[6]
Petition granted and order quashed.
MORRIS and SLEET, JJ., Concur.

. A cholecystectomy is a surgical procedure for the removal of the gall bladder.

. Bartow Regional sought certiorari review of the order in this court. We denied the petition. Bartow HMA, LLC v. Kirkland, 93 So.3d 1021 (Fla. 2d DCA 2012) (table decision).

. At the hearing, counsel further argued that one document that had been produced reflected that Dr. Thomas's conversion rate was twenty-six percent when the national average was five percent, demonstrating that Dr. *1251 Thomas was committing malpractice in his conversions.

. The circuit court found in the order under review that "[d]uring the hearing counsel for [Bartow Regional] conceded that the objections raised in Privilege Log A were improper and produced said documents ... prior to the ... hearing.”

. Ultimately, this court granted a stay of the underlying matter pending the resolution of Bartow Regional’s petition.

. Because Bartow Regional apparently included some documents on its privilege logs that it contends are not responsive to the request to produce, the circuit court may wish to permit Bartow Regional to resubmit its privilege logs, listing only those documents that are clearly responsive, before undertaking any review. Of course, Ms. Kirkland could seek to compel Bartow Regional to produce any documents that she contends are responsive to the request to produce and have been improperly withheld.